691 A.2d 929

**ANGLO–AMERICAN INSURANCE COMPANY, Zurich Re (UK) Ltd., and Colin William Spreckley, an Underwriter at Lloyd's London, on behalf of himself and those other Lloyd's Underwriters subscribing to Policy No. 595/DOO 114001, Appellants,**

v.

**Emil J. MOLIN, et al., Appellees.**

Supreme Court of Pennsylvania.

Submitted July 10, 1996.

Decided March 26, 1997.

James J. Binns, Philadelphia, Christopher J. Graham, pro hac vice, New York City, and Erika L. Austin, Philadelphia, for Anglo–American Ins. Co. et al.

George Bochetto, Philadelphia, for Frederic S. Richardson.

Jerome Stestack and Zachary Grayson, Philadelphia, for Insurance Commissioner.

Walter Wier, for Theodore D. Nering.

Eugene J. Maginnis and Gerald J. Dugan, Philadelphia, for Joseph Breakly.

Helen Mandel Braverman, Philadelphia, for David Smith.

Louis B. Kupperman, Philadelphia, for Whetstone, Richardson et al.

Joseph M. Fioravanti, Media, for CO–CN Frederic Richardson.

Joseph T. Kelley, Jr., Bethlehem, for Harry Stokes.

David L. Jacobsen, Chicago, IL, for Barry Feldman.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

FLAHERTY, Chief Justice.

This is a direct appeal of three orders of the Commonwealth Court. The first order dated February 27, 1996, 673 A.2d 986,

is a preliminary injunction which orders the appellants (hereinafter the "1994 Underwriters")[1] to pay certain amounts of money pursuant to insurance coverage which they allegedly agreed to provide to Molin, et al. (Emil J. Molin, Theodore D. Nering, and Frederic S. Richardson, hereinafter "the Richardson defendants"). The second order, dated April 18, 1996, holds the 1994 Underwriters in contempt for failure to pay as they were ordered by the preliminary injunction, and orders payment. The third order, dated May 10, 1996, denies 1994 Underwriters' motion for a stay or supersedeas and directs the 1994 Underwriters to immediately pay two-thirds of the Richardson Defendants' legal expenses, not to exceed $250,-000.

The factual background of the case is that in 1993 Lawrence Underwriters and Anglo–American Insurance Company ("the 1993 Underwriters") issued a directors and officers liability insurance policy which covered the Richardson defendants, who were directors and officers of Corporate Life Insurance Company against loss from claims first made during the policy period (1993) for "wrongful" acts. The insurance coverage did not include a duty to defend, but only payment for damages, settlements and costs, which could include legal expenses.

On May 25, 1993, Corporate Life provided 1993 Underwriters notice that there was a possible claim against its officers and directors:

Please accept this letter as official notice by all named insureds under the policy of a possible claim under the above-referenced policy.

On May 7, 1993, the management of Corporate Life Insurance Company ("CLIC") received [a pleading from] the Pennsylvania Department of Insurance.... This document, filed under seal with the Commonwealth court of Pennsylvania, alleges certain actions which if proven to be

1. The 1994 Underwriters are Anglo–American Insurance Company, Colin Spreckley, an underwriter at Lloyd's London, on behalf of himself and all those other underwriters subscribing to policy number 595/DOO 114001 and Zurich Re (UK) Ltd.

true, could give rise to a claim under the above-referenced policy.

The acts alleged to be "Wrongful Acts" as that term is defined in the Policy include: self-dealing, falsifying assets; and improper investing. If proven, the individual directors and officers involved could be subject to liability in excess of the policy limits.

If you should have any questions regarding this matter please feel free to contact me.

The background of the insurance departments's allegations is that on March 30, 1992, the Pennsylvania Insurance Department issued an ex parte suspension order suspending the business of Corporate Life based on a finding that it was insolvent. Thereafter Corporate Life and the insurance department entered into negotiations and on March 31, 1993 Corporate Life requested a rule to show cause why a purported settlement agreement should not be enforced against the insurance department. On May 7, 1993 the insurance commissioner filed an "Opposition to Enforce Settlement and Response to Corporate Life Insurance Company's Objection and Petition to Strike Plaintiff's Praecipe to Withdraw Petition for Liquidation." The pleading referred to in Corporate Life's letter was the "Opposition Petition" filed by the insurance commissioner.

Among the allegations contained in the Opposition Petition are that Corporate Life failed to produce thousands of key documents; disregarded document requests; failed to grant the department free access to books and records; hid documents; instructed others not to cooperate with the department; and gave false information in an attempt to mislead the department. RR. 140a.

The department stated: "Inasmuch as the Department anticipates filing a Petition to Liquidate Corporate Life Insurance Company within the next month, it would be a waste of judicial resources, the resources of the Commonwealth, and, indeed, of Corporate Life itself to litigate these factual issues in this forum." RR. 141a142a. Nonetheless, the department

did offer illustrations in its Opposition Petition of Corporate Life's alleged violations:

22. Corporate Life has falsified its books and records to create a surplus which does not exist and to hide an alarming operating loss. Such acts include the listing on its 1992 Annual Statement as 1992 assets over 489 mortgages created in 1993 and having a stated aggregate value in excess of $21,664,000. . . .

23. Corporate Life has engaged in the above-cited and other extensive fraud involving fraudulent acts in concert with and participated in by Frederick Richardson, Emil Molin, Ted Nering, and the firm of Shiffman Hughes Brown, DP Realty and various others.

24. The Department has uncovered a systematic scheme to strip Corporate Life of any valuable and liquid assets. . . .

25. Additional evidence of self-dealing in violation of Pennsylvania insurance statutes and regulations relate to Richardson's use of Corporate Life funds to purchase, finance and/or refinance personal residential real estate holdings. On July 7, 1992, Corporate Life Insurance Company issued a certified check in the amount of $400,000 for the purchase of Frederic Richardson's personal residence. The $400,000 is the full amount of the purchase price of Frederic Richardson's personal residence. To date, Corporate Life has been unable to produce any documentation relating to any "mortgage" or other loan documents relating to this advance of $400,000. (The Department has been informed that Richardson repaid this loan under pressure in late 1992). . . .

26. On that same day, July 7, 1992, Frederic Richardson caused Corporate Life to issue a $115,000 check for the payment of the mortgage on another residence in which he has a pecuniary interest. The residence is purportedly occupied by his mother-in-law. Corporate Life and Richardson have failed to disclose this transaction as required pursuant to the Pennsylvania Insurance Holding Company Registration Act.

27. In July, 1992, Richardson, Molin and Nering caused Corporate Life to fund their purchase of a mortgage bank-

ing operation in St. Petersburg, Florida. While Richardson, Molin and Nering contributed little or no capital to the transaction, they obtained 100% of the capital stock of the mortgage banking operation. This was accomplished by the transfer of assets of Newspan, a wholly-owned subsidiary of Corporate Life, to the corporation owned by Richardson, Molin and Nering. Corporate Life has valued the assets transferred at more than $13 million. . . .

28. These are but a few of the facts which have come to light *concerning Corporate Life Insurance Company, American Homestead, Inc., Frederic Richardson, Emil Molin, Ted Nering,* and others. The Department shall prove each and every one of these facts as well as other information presently known to the Department that demonstrates further impairment of Corporate Life in excess of $20 million.

29. Corporate Life's fraudulent schemes were known to it, and, inter alia, Messrs. Richardson, Molin, Nering, and Shiffman at the time it was negotiating the purported settlement agreement which it now seeks to enforce. Throughout that time period, they and others in concert with them repeatedly represented to the Department that it was in compliance with all applicable Pennsylvania regulations and statutes. Moreover, it repeatedly represented to the Department that it was solvent. These affirmative misrepresentations were the basis for the Department's willingness to discuss the purported agreement identified above. *Through these affirmative misrepresentations and failure to disclose the fraudulent schemes being perpetrated by Corporate Life, its counsel and its accountants,* Corporate Life fraudulently induced the Insurance Commissioner to issue an . . . Amended Order of Supervision.

RR. 148a–151a (emphasis added).

On June 4, 1993, the commissioner filed a 158 page petition to liquidate Corporate Life. The commissioner sought to be appointed as Corporate Life's statutory liquidator. Among the alleged grounds for liquidation were wrongful diversion of

corporate assets, control by dishonest persons, and willful violations of Pennsylvania insurance law.

On July 2, 1993, the Commonwealth Court required the commissioner and Corporate Life to select an overseer for Corporate Life. The court stated that the commissioner's petition to liquidate would be determined based upon the overseer's findings and that the commissioner would not pursue any claims against Corporate Life or its officers and directors until after the overseer's decision.

In 1994, Lloyd's (for Spreckley Underwriters) and LIRMA (for Anglo and Zurich) (the 1994 Underwriters) provided Corporate Life with a 1994 insurance policy once again covering liability of the officers and directors of Corporate Life for claims made during 1994 for wrongful acts. An exclusion in the 1994 policy stated:

III. EXCLUSIONS

Underwriters shall not be liable to make any payment for loss in connection with any claim made against the Directors and Officers:

\* \* \*

    B. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) any Wrongful Act or any fact, circumstance or situation, event or transaction which has been the subject of any notice given prior to the effective date of this Policy under any prior policy, or

(2) any other Wrongful Act whenever occurring which, together with a Wrongful Act which has been the subject of such notice, would constitute Interrelated Wrongful Acts....

Lloyd's Policy, III Exclusions, RR. 333a. "Interrelated wrongful acts" are defined as "wrongful acts which have as a common nexus any fact, circumstance, situation, event, trans-

action or series of facts, circumstances, situations, events or transactions." Lloyd's Policy, II, Definitions, RR. 332a.

On December 29, 1994, the insurance commissioner, acting as Corporate Life's statutory liquidator, filed a writ of summons in *Maleski et al v. Molin et al* in the Commonwealth Court against fifteen defendants, all of whom are former officers or directors of Corporate Life. On June 19, 1995, a complaint was filed entitled *Insurance Commissioner of the Commonwealth of Pennsylvania v. Molin et al,* naming Emil Molin, Theodore Nering and Frederick Richardson, former directors and officers of Corporate Life (the Richardson defendants). The complaint alleged:

Count I. Breach of fiduciary duty to Corporate Life, its policyholders and creditors;

Count II. Fraud by concealing the true financial condition of Corporate Life from the public, policyholders and the Insurance Department;

Count III. Negligence in managing Corporate Life and controlling its assets;

Count IV. Waste and diversion of Corporate Life opportunities and assets by engaging in transfers of Corporate Life assets for the benefit of themselves and their other companies to detriment of Corporate Life;

Count V. Breach of contract against defendants Molin and Nering by their failure to perform their obligations and duties under a consulting agreement;

Count VI. Recovery of fraudulent transfers that were made while Corporate Life was insolvent; and

Count VII. Recovery of unlawful investments that violated provisions of Pennsylvania insurance law and regulations.

On July 27, 1995, 1993 Underwriters filed an interpleader action against the Richardson defendants and others, in which 1993 Underwriters attempted to interplead the limit remaining under the 1993 policy to resolve the Richardson defendants' claims relating to *Maleski* (the lawsuit filed by the insurance commissioner against the Richardson defendants). On November 6, 1995, the Commonwealth Court denied the

Richardson defendants' motion for a preliminary injunction which would compel 1993 Underwriters to pay their *Maleski* defense costs under the 1993 policy. Other lawsuits had been filed against various former officers and directors of Corporate Life and there were competing claims under the 1993 policy.[2]

On August 25, 1995, the 1994 Underwriters filed a complaint for declaratory judgment. The Richardson defendants filed a counterclaim that the 1994 Underwriters must pay their *Maleski* legal fees and defense costs. Thereafter, the Richardson defendants moved for a mandatory preliminary injunction compelling the 1994 Underwriters to pay their *Maleski* legal fees.

On February 27, 1996, the Commonwealth Court entered a mandatory preliminary injunction directing 1994 Underwriters to pay for the Richardson Defendants' defense costs in the *Maleski* matter.

1994 Underwriters then moved for reconsideration and a stay, and the Richardson defendants petitioned for contempt. On March 22, 1996, the Commonwealth Court denied the stay of its injunction.

On March 25, 1996, 1994 Underwriters filed a notice of appeal and posted an appeal bond in accord with Pa.R.A.P. 1731(a). On April 18, 1996, the Commonwealth Court held 1994 Underwriters in contempt, and on May 10, 1996 it required 1994 Underwriters to pay two thirds of the Richardson defendants' costs immediately.

This court then consolidated 1994 Underwriters' appeals, stayed the February 27, 1996 and April 18, 1996 orders, and granted the application for expedited appeal.

The issues on this appeal are whether it was error for Commonwealth Court to issue an injunction requiring 1994 Underwriters to pay legal fees and defense costs in *Maleski* and whether it was error for Commonwealth Court to have

---

**2.** *Maleski,* the interpleader action and the instant case were heard or are pending before the same Commonwealth Court judge.

held 1994 Underwriters in contempt, notwithstanding that they filed a timely notice of appeal and posted an appeal bond.

In general, the 1994 Underwriters are seeking a declaratory judgment that they are not liable under the 1994 insurance policy for the Richardson defendants' costs to defend the *Maleski* action, since the acts which underlay the *Maleski* action were reported in 1993 to 1993 Underwriters, and only 1993 Underwriters are liable under the terms of the 1994 policy. The Richardson defendants, on the other hand, are seeking a declaration that 1994 Underwriters are liable.

The Commonwealth Court noted that a preliminary injunction may be granted only where:

(1) the relief is necessary to prevent immediate and irreparable harm that cannot be compensated by damages; (2) greater injury will occur from denying the injunction than from granting it; (3) the injunction will restore the parties to the status quo as it existed prior to the alleged wrongful conduct; (4) the alleged wrongful conduct is manifest; and (5) the moving party's right to relief is clear. *Lewis v. City of Harrisburg,* [158 Pa.Cmwlth. 318], 631 A.2d 807 (1993). Being an extraordinary remedy, a preliminary injunction should not issue if the moving party's right thereto is not clear. *Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 207 A.2d 768 (1965)....

673 A.2d at 987. Thus, before a preliminary injunction may issue, we must examine whether the five factors stated by the Commonwealth Court are present. We begin with a consideration of whether the moving party's right to relief is clear. If it is not, an injunction may not issue.

The essence of the dispute, as stated above, is whether the 1994 claim is excluded by the terms of the 1994 policy. In general, the 1994 policy covers wrongful acts which are reported during 1994, except that (a) it does not include coverage for wrongful acts, or circumstances, situations, events or transactions which have been the subject of notice before 1994 under any prior policy; or (b) it does not include coverage for

wrongful acts which are interrelated to other wrongful acts which have been noticed to an insurance carrier prior to 1994.

The Commonwealth Court in its February 27, 1996 opinion took the view that even though the insurance commissioner made allegations of wrongful conduct in its 1993 Opposition Petition, she did not make any claims against the officers and directors of Corporate Life. Moreover, the lower court's view was that there are numerous allegations in the *Maleski* action that were not raised in the Opposition Petition. The Commonwealth Court concluded from this that it was appropriate to issue a preliminary injunction in the Richardson defendants' favor.

We disagree. In order for the injunction to issue, the Richardson defendants' right to relief must be clear. A viable argument can be made that in both 1993 and 1994 the insurance commissioner was alleging that the Richardson defendants were raping the insurance company and that their conduct involved fraud and numerous violations of law. The commissioner did not set out the allegations in detail in 1993, as she stated in the Opposition Petition, in order to avoid pointless duplication of work, but she made clear that the Richardson defendants, those in control of Corporate Life, were engaged in a systematic fraudulent scheme to divert more than $20 million of Corporate Life's assets.

It may be true, as the Commonwealth Court states, that matters are alleged in the *Maleski* lawsuit which were not mentioned in the Opposition Petition. That, however, is not dispositive. In order for the injunction to issue, it must be clear that the Richardson defendants will prevail, i.e., it must be clear that the *Maleski* matter was *not* "based upon" "a wrongful act whenever occurring ... together with a wrongful act which has been the subject of [prior] notice" or "any other wrongful act whenever occurring, which together with a wrongful act which has been the subject of [prior] notice, would constitute interrelated wrongful acts." (Lloyd's Policy, III. Exclusions, RR. 333a, supra). "Interrelated wrongful acts," it will be recalled, are "wrongful acts which have as a common nexus, any *fact, circumstance, situation event trans-*

*actions or series of facts, circumstances, situations, events or transactions."* RR. 332a. (Emphasis added.)

Although the Richardson defendants may, in fact, prevail in their claim that they are entitled to 1994 insurance coverage as well as 1993 coverage after the case has been fully litigated, we cannot say that their right to relief, on this record, is clear. It is plausible that the matters complained of in *Maleski* were wrongful acts which have a common nexus of facts, circumstances, situations, events and transactions and that they are, therefore, excluded from 1994 coverage. In the absence of a clear right to recover, it was error to issue the preliminary injunction.

The orders of February 27, 1996, April 18, 1996 and May 10, 1996 of the Commonwealth Court are reversed and the case is remanded for trial on the underlying issues in the declaratory judgment action.[3]

ZAPPALA, J., concurs in the result.

---

**3.** The 1994 Underwriters also argue that it was error for Commonwealth Court to have found them in contempt of the preliminary injunction notwithstanding that they had filed a timely notice of appeal and posted an appeal bond. In view of our disposition of the case, we do not address this claim, which now is moot.