# Butler v. Provident Mutual Life Insurance Co.

C.P. of Philadelphia County, no. 9901-0780.

*Kenneth A. Jacobsen* and *Bruce E. Gerstein,* for plaintiffs.
*Laurence Z. Shiekman,* for defendants.

LEVIN, *J.,* February 11, 1999—Before this court are plaintiffs' motion for preliminary injunction and all responses thereto. On February 1, 1999, the court heard argument on the merits of plaintiffs' motion. For the reasons stated below, the court grants plaintiffs' motion and enjoins defendants from filing any documents with the office of the secretary of the Commonwealth of Pennsylvania to effectuate Provident Mutual Insurance Company's plan to convert from a mutual insurance company to a stock life insurance company and from taking any further action to implement the plan of conversion until after the court conducts a full hearing and issues an order to take such action.

## INTRODUCTION

On January 11, 1999, plaintiffs, policyholders in Provident Mutual Insurance Company, filed a class action complaint on behalf of themselves and all other Provi-

dent policyholders containing six counts[1] and prayers for declaratory, injunctive and monetary relief. Plaintiffs' complaint arises out of Provident's plan to convert from a mutual insurer to a stock insurer.[2] Under the plan, policyholders' membership rights[3] "will be exchanged for membership rights in Provident Mutual Holding Company" while policyholders' contract rights[4] will be held

---

1. The six counts are: I. Fundamental unfairness; II. Unfair self-dealing; III. Failure to provide dissenters' rights; IV. Failure to disclose dissenters' rights; V. Violation of duty of disclosure; and VI. Misrepresentation.

2. Under Provident's plan of conversion, Provident Mutual converts from a single mutual insurer corporation to three interrelated corporations. These three corporations are: (1) a holding company (entitled Provident Mutual Holding Company and purportedly a Pennsylvania nonstock corporation); (2) a stock corporation (entitled Prov*first* American Corporation and purportedly a Pennsylvania stock corporation); and (3) a stock life insurance company (entitled Prov*first* American Life Insurance Company and purportedly a Pennsylvania stock life insurance company).

The stock corporation, Prov*first* American Insurance Corporation, will own *all* the voting stock of the stock life insurance company, Prov*first* American Life Insurance Company, thereby becoming a subsidiary of Provident Holding Company. The holding company will own at least a majority of the voting stock of the stock corporation. The minority voting authority of the stock corporation will be vested in the shareholders of Prov*first* Life. (Policyholder information statement at 8.)

3. According to Provident, membership rights include the right to vote, and the right to any surplus which would remain after insolvency, winding-up or liquidation of Provident Mutual. (*Id.* at 12.)

4. Provident defines contract rights as the right to receive benefits as specified in members' policies or contracts and the right to dividends. (*Id.*)

in the stock life insurance company. (Policyholder information statement at 12.)

Plaintiffs contend that the plan will harm them because they "lose their right to have their insurer operated solely for their benefit and to receive insurance at cost . . . [because] they will become customers of a stock company which seeks to maximize the profit it can make from policyholders for the benefit of its owners, the stockholders." (Plaintiffs' complaint at 10.) Plaintiffs additionally argue that their membership rights in the mutual holding company are worthless because the plan prohibits the mutual holding company from making any distributions or payments to policyholders. Most troubling to the plaintiffs, however, is that after the conversion, members no longer have an "exclusive claim" on the surplus of the company because it will be transferred to the stock life insurance company which is owned by the stockholders of the stock holding company rather than the policyholders.[5] Thus, plaintiffs believe they are entitled to a proportionate share of the value of the company.

Specifically, plaintiffs claim that defendants (1) violated Pennsylvania's corporate statutes because the statutes do not permit a mutual holding company; (2) breached their fiduciary duties because the plan entrenches and enriches the board of directors at the expense of adequately and fairly compensating policyhold-

---

5. Plaintiffs allege that at the end of 1997, Provident had a statutory surplus of $374 million. (Plaintiffs' complaint at ¶31.)

ers for their interests; (3) violated Pennsylvania corporate statutes because the plan fails to provide to members who object to the plan the right to dissent and obtain fair value for their interests; and (4) breached their fiduciary and common-law duties of disclosure because the policy information statement contains material misrepresentations and omits material information and overall is misleading and deceptive.

Defendants respond by asserting that plaintiffs are not entitled to any proportional share of the value of the company because the policyholders own the assets mutually—not individually—and their interests are contingent—not present. Similarly, defendants argue that policyholders will be in the same position after conversion as they were before conversion. That is, policyholders will continue to have no ownership or other rights to the surplus, the right to vote for directors, and the right to receive policy dividends and death benefits. Defendants additionally argue that the plan is permitted by Pennsylvania's Business Corporation Law and the Mutual Insurance Company Conversion Act and that the policyholder information statement fully and fairly discloses the nature and terms of the conversion so that policyholders can make a full and informed decision on whether to approve the plan.[6]

---

6. On February 9, 1999, Provident policyholders voted overwhelmingly to approve the plan with 57,402 policyholders approving the plan, 6,834 voting against the plan and 38 abstaining.

After discussing the legal standard it will apply to plaintiffs' motion, the court will address whether plaintiffs' motion meets this standard.

## DISCUSSION

### A. *Applicable Law*

The court should grant plaintiffs' motion if plaintiffs carry their burden[7] to establish the following five elements: "(1) relief is necessary to prevent immediate and irreparable harm [which] cannot be compensated by damages; (2) greater injury will occur from denying the injunction than from granting it; (3) the injunction will restore the parties to the status quo as it existed [before] the alleged wrongful conduct; (4) the alleged wrongful conduct is manifest; and (5) [plaintiff's] right to relief is clear." *Anglo-America Insurance Co. v. Molin,* 547 Pa. 504, 513, 691 A.2d 929, 933 (1997); *Cappiello v. Duca,* 449 Pa. Super. 100, 105, 672 A.2d 1373, 1376 (1996).

---

7. The amount of proof plaintiffs must proffer to sustain their burden is unclear. Compare *Wolf v. Baltimore,* 250 Pa. Super. 230, 378 A.2d 911 (1977) (stating that plaintiff must demonstrate prima facie the elements of a preliminary injunction) with *Three County Services Inc. v. Philadelphia Inquirer,* 337 Pa. Super. 241, 246, 486 A.2d 997, 1000 (1985) (stating that "petitioner has a heavy burden of proof").

Appeals courts review a trial court's decision to grant or deny a preliminary injunction under the standard of review of whether the trial court had "reasonable grounds" to support its decision to issue the injunction. *School District of Wilkinsburg v. Wilkinsburg Education Association,* 542 Pa. 335, 340, 667 A.2d 5, 7 (1995).

"The primary purposes of a preliminary injunction are to preserve the status quo and prevent imminent and irreparable harm which might occur before the merits of the case can be determined." *Berger v. West Jefferson Hill School,* 669 A.2d 1084, 1085 (Pa. Commw. 1995). (footnote omitted) Thus, "[a] preliminary injunction cannot serve as a judgment on the merits since by definition it is a temporary remedy granted until that time when the party's dispute can be resolved." *In re Appeal of Little Britain,* 651 A.2d 606, 611 (Pa. Commw. 1994). Finally, the grant or denial of a preliminary injunction has no effect on whether a final permanent injunction will ultimately be issued. *Berger,* 669 A.2d. at 1086.

## B. *Conclusions of Law*

We conclude that preliminary injunction should issue because the policyholder information statement omits material information, fails to fully and fairly address whether the conversion is in the best interests of policyholders, is misleading on material facts and, taken as a whole, does not enable the policyholder to make an informed decision on whether to approve or disapprove the plan. Thus, we determine, preliminarily, that policyholders did not have sufficient information to make an informed vote when they approved the plan on February 9, 1999. Thus, the defendants should be enjoined from effectuating the plan because it is not the product of an informed policyholder vote.

Below, we identify a number of material omissions and partial disclosures and briefly explain why we be-

lieve they are material to a policyholder's decision to approve or disapprove the plan. These omissions and partial disclosures include, but are not limited to, the following:

(1) Failure to disclose to policyholders that Morgan Stanley and/or PriceWaterhouse Coopers concluded that full demutualization was better for current policyholders than the partial conversion contemplated by the plan. This disclosure would provide the proper context for policyholders to evaluate the board's conclusion that the conversion is in the "best interest of policyholders."

(2) Failure to inform policyholders why Morgan Stanley was not asked to compare Provident's plan with other demutualization alternatives in order to determine which was better from a point of view. Revealing this fact would enable policyholders to evaluate the basis of the board's decision to approve the plan.

(3) Failure to fully describe the subscription rights that full demutualization gives to policyholders. Having ventured to explain full demutualization, the policy information statement should adequately explain what policyholders would receive under the alternatives to partial conversion and how that differs from what policyholders will receive from the plan. This allows policyholders to evaluate the board's conclusion that the conversion is in the policyholders' best interests.

(4) Failure to discuss the material factors Morgan Stanley relied on in reaching its opinion. Without this

information, policyholders cannot sufficiently evaluate Morgan Stanley's opinion.[8]

(5) Failure to explain that Provident cannot be acquired in a hostile takeover. This disclosure would fully explain the degree of control policyholders have over Provident. The policyholder information statement emphasizes that policyholders will have overall control of the enterprise. But this statement is misleading because nominations of members for election to the board requires the greater of 7,500 members or 2.5 percent of the members of the corporation, a formidable task. This information is material because the policyholder information statement discloses that the policyholders' ability to control the board of directors protects against the risks associated with the conversion.

Having identified some of the deficiencies of defendants' disclosure, we will address the elements of a preliminary injunction.

### 1. Immediate and Irreparable Harm

Provident's material omissions and misleading statements immediately and irreparably harmed the policyholders' ability to make an informed vote. This harm cannot be compensated through damages because it is nearly impossible to quantify the harm associated with an uninformed vote. In addition, the court believes that an injunction is the best means to achieve full and fair disclosure.

---

8. The same information should be divulged with respect to PriceWaterhouse Coopers LLP actuarial opinion.

## 2. Greater Injury

The balance of injury in this case tips precipitously toward the plaintiffs. Once the articles of incorporation are filed, plaintiffs effectively lose their ability to choose the structure of the company. This choice is important because, under the alternatives to the plan, plaintiffs could receive valuable subscription rights or cash payments in exchange for their membership interests.[9] The defendants, by contrast, temporarily lose their ability to implement the plan. Furthermore, as stated in the policyholder information statement, Provident "has not formulated any plans at this time to raise capital." While the court recognizes the monetary burden imposed upon the defendants by the delay, we are not persuaded that this harm outweighs the harm done to the plaintiffs. The court will decide, after a full hearing, whether to vacate the February 9 vote and require the defendants to redo and recirculate the policyholder information statement. However, at this juncture, we are not prepared to make such an order.

---

9. Additionally, denying the injunction prevents the plaintiffs from possibly obtaining valuable dissenters' rights. The court has not decided whether policyholders are entitled to dissenters' rights. Preliminarily, we believe Provident's plan qualifies as a share exchange under 15 Pa.C.S. §1931(d). Thus, plaintiffs may be entitled to dissenters' rights under Pa.C.S. §1571 if they are not within the exception of section 1571(b)(2)(i). Because the parties have not fully briefed whether policyholders' memberships are converted solely into the memberships of the new corporation, we are unable to rule whether plaintiffs are entitled to dissenters' rights. This injunction gives the parties the right to fully brief this issue.

### 3. Status Quo

The injunction maintains the status quo because it does not annul the February 1, 1999 vote, or require the defendants to redo and recirculate the policyholder information statement. The injunction does not eviscerate Provident's efforts at preparing and implementing the conversion. Instead, it delays the conversion's consummation until the court can hold a full hearing.

### 4. Wrongful Conduct Is Manifest

As indicated by our description of the policyholder information statement's deficiencies, Provident precluded policyholders from making an informed decision to approve or disapprove the plan.

### 5. Right to Relief Is Clear

Plaintiffs' right to relief is clear because we have preliminarily determined that defendants breached their fiduciary duty to act in the policyholders' best interests when they submitted to policyholders an information statement that does not enable the policyholder to make an informed vote. "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances." *Seaboard Industries Inc. v. Monaco,* 442 Pa. 256, 261 n.1, 276 A.2d 305, 308 n.1 (1971) (quoting from Business Corporation Law, Act of May 5, 1933,

P.L. 364, art. IV, section 408, as amended, 15 P.S. §1408 *Supp. 1970). In addition, it is "axiomatic that directors and officers of a corporation are jointly as well as severally liable for mismanagement, willful neglect or misconduct of corporate affairs . . . ." *Id.* at 263, 276 A.2d at 309. The directors owed a duty to the policyholders to disclose material information about the conversion so that the policyholders could make an informed decision. We have preliminarily determined that the directors and Provident failed in this regard and thus they should be enjoined from implementing the plan of conversion.

For the foregoing reasons, the court preliminarily enjoins the defendants from implementing the plan of conversion until a full hearing is held to address the court's concerns about the policyholder information statement, and until the parties have a full opportunity to brief Provident's transaction entitles policyholders to dissenters' rights.

## ORDER

And now, February 11, 1999, upon consideration of plaintiffs' motion for preliminary injunction and all responses thereto, it is hereby ordered as follows:

Plaintiffs' motion for preliminary injunction is granted.

Defendants are enjoined from filing any documents related to Provident Mutual Insurance Company's plan of conversion with the office of the secretary of the Commonwealth of Pennsylvania and from taking any action to effectuate the plan of conversion until ordered by this court after a full hearing.