**SYNTHES USA SALES, LLC, Appellant**

v.

**Peter HARRISON and Globus Medical, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued July 24, 2013.

Filed Dec. 24, 2013.

Anthony B. Haller, Philadelphia and Thomas A. Riley, Jr., Exton, for appellant.

Lawrence H. Pockers, Philadelphia, for appellees.

BEFORE: BENDER, PANELLA, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellant, Synthes USA Sales, LLC ("Synthes"), headquartered in Pennsylvania, appeals from the order entered in the Chester County Court of Common Pleas granting in part and denying in part its motion for a preliminary injunction against Appellees, Globus Medical, Inc. ("Globus"), also headquartered in Pennsylvania, and Peter Harrison, a California resident. Synthes contends that the trial court erred by applying California law in contravention of a non-compete agreement that provides it "will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania." We agree with Synthes and therefore reverse the order below and remand for further proceedings.

We state the facts and procedural history as set forth by the trial court:

On November 2, 2012, Peter Harrison quit his employment as a sales consultant with [Appellant] and started working in that capacity for a competitor, [Globus]. Within a half hour of giving his notice, Harrison initiated an action for declaratory relief in the federal District Court for the Eastern District of California, where at all times material hereto he resided and worked. Synthes, based in Chester County, Pennsylvania, is a leader in the medical device industry. It designs, manufactures and sells various devices for use in orthopedic surgery for the internal fixation and repair of the skeleton. Globus ..., headquartered in nearby Audubon, Pennsylvania, competes in that market.

On November 15, 2012, Synthes filed a complaint in the Court of Common Pleas of Chester County, along with an expedited Petition for a Preliminary Injunction, in which it sought to enforce a written "Confidentiality, Non–Solicitation and Non–Competition Agreement" ("the 2007 Agreement"). On the following day, Synthes filed a Motion to Dismiss the federal California action, which dealt with an earlier agreement executed by the parties in 2005.

On November 19, 2012, Harrison amended his complaint in the California action so as to seek declaratory relief regarding the 2007 Agreement, and Synthes moved to dismiss that action asserting that the federal court should

* Former Justice specially assigned to the Superior Court.

abstain from hearing a declaratory judgment action when an action addressing the same issues of state law are pending in state court in a foreign jurisdiction.[1]

Harrison and Globus, as defendants in the [Pennsylvania action], filed preliminary objections to the complaint seeking to stay or dismiss on the grounds that the California action was a prior pending action for purposes of Pa.R.C.P. 1028(a)(6).

\* \* \*

The gist of [Synthes's] claims is that Harrison breached the terms of the 2007 … Agreement after he resigned his position and went to work for Globus. [Synthes] alleges that [Harrison] used confidential customer information to solicit Synthes['s] customers in violation of that agreement.

Trial Ct. Op., 2/8/13, at 1–2 (citations omitted).

The 2007 Agreement provided, *inter alia*, that Harrison would not solicit Synthes's customers for one year after his employment ended:

I agree that during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not solicit, contact, or provide services to (or attempt to do any of the foregoing), directly or indirectly, for the purpose or effect of competing or interfering with any part of Synthes' Business: (1) any Customer of Synthes within my assigned territory; (2) any Customer of Synthes that I contacted, solicited, received commissions on sales, to whom I provided coverage, or in any way supported or dealt with at any time during the last two years of my employment; (3) any prospective Customer of Synthes that I contacted or who received or requested a proposal or offer from me on behalf of Synthes at any time during the last two years of my employment; or (4) any Customer of Synthes for which I had any direct or indirect responsibility at any time during the last two years of my employment.

Ex. B. to Synthes's Compl., 11/15/12, at 3.

The 2007 Agreement also contained a choice of law provision:

*CHOICE OF LAW AND FORUM:*

This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania. I agree that this agreement can be enforced by any federal or state court of competent jurisdiction in the Commonwealth of Pennsylvania and hereby consent to the personal jurisdiction of these courts.

*Id.* at 5.

The trial court interpreted the provision as requiring the application of California law. Trial Ct. Op. at 4. The court, applying California law, granted in part and denied in part Synthes's motion for a preliminary injunction on December 17, 2012. *Id.* at 5. On December 21, 2012, the court issued an amended order granting in part and denying in part Synthes's petition for a preliminary injunction. Synthes timely appealed that same day and timely filed a

---

1. The federal court granted Synthes's motion to dismiss Harrison's complaint. *Harrison v. Synthes USA Sales, Inc.*, No. 2:12–CV–02704, 2013 WL 1007662 (E.D.Cal. Mar. 13, 2013) (order declining to exercise jurisdiction over lawsuit because of ongoing Pennsylvania lawsuit), *appeal docketed*, No. 13–15697 (9th Cir. Apr. 16, 2013) (Harrison appealing order). The United States Court of Appeals for the Ninth Circuit has stayed the appeal pending a decision by this Court and instructed the parties to notify it of this Court's decision within fourteen days. Order, 10/2/13.

court-ordered Pa.R.A.P. 1925(b) statement.

Synthes raises the following issues:

Did the trial court err in finding that the parties did not select Pennsylvania law as the governing law of the contract, where the contract's plain, unambiguous language states, in a clause titled, *"Choice of Law and Forum,"* that the non-solicitation agreement *"will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania"*?

Did the trial court err as a matter of Pennsylvania law by incorrectly and incompletely applying each of the separate and independent prongs of the three-prong test set forth in the Restatement (Second) Conflicts of Law Section 187(2)(b),[2] erroneously disregarding the parties' choice of Pennsylvania law, by:

 (a) Under the first prong of the Restatement Test, (i) failing to apply the correct legal principles to the threshold question of whether California has a materially greater interest than Pennsylvania in the determination of the particular issue; (ii) confusing the question of the materially greater interest under the first prong of the Restatement Test with the question under the second prong of whether application of Pennsylvania law would be contrary to California's fundamental policies; and (iii) by answering the question of which state had a materially greater interest by erroneously relying solely on the fact that Harrison lives and works in California, applying in effect a *per se* rule to defeat the parties' choice of law, and by disregarding the well-established case law under which, on the undisputed facts of this case, Pennsylvania's interest in the determination of the particular issue far outweighed California's interests;

 (b) Under the second prong of the Restatement Test, failing to recognize that there was no fundamental conflict of policy sufficient to disregard the chosen law because this case involved the enforcement of a non-solicitation provision designed to protect against the disclosure of trade secret information, as opposed to a blanket non-compete provision, and California law

---

2. The Restatement (Second) of Conflicts of Law § 187 states:

 **§ 187 Law of the State Chosen by the Parties**

 (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

 (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

 (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

 (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

 (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Law § 187(1)-(3) (1971). We are aware that the 1971 version was revised in 1988. The Reporter's Note to the 1988 revision, however, indicated that the only change was to Comment i.

clearly allows for the entry of an injunction to prevent customer solicitation using trade secret information; and

(c) Under the third prong of the Restatement Test, by failing to consider the required multi-factored test to the question of which law would apply in the absence of an effective choice-of-law clause, particularly where the record establishes that the vast majority of the factors to be considered overwhelmingly favor the application of Pennsylvania law?

Synthes's Brief at 3–4 (footnote and some capitalization omitted).

We summarize Synthes's argument for its first issue. Synthes contends the trial court disregarded the plain meaning of the choice-of-law clause in the 2007 Agreement. Specifically, Synthes argues the court erred by construing the clause as applying to contracts that are performed in Pennsylvania only. It maintains that the court's erroneous construction defies the plain English interpretation of the clause and defeats the purpose of including such a provision. Appellees succinctly counter that because Harrison performed the contract in California—not Pennsylvania—the 2007 Agreement's choice-of-law clause does not apply. Appellees' Brief at 10.[3]

The trial court did not explain its reasoning for concluding that the choice-of-law clause applies only to contracts actually performed in Pennsylvania. The court, however, recognized that the 2007 Agreement explicitly provided for confidentiality and non-solicitation of customers. Although no party challenged contractual capacity, contractual formality, or substantial validity, the court opined that the exception at Restatement (Second) Conflicts of Law § 187(2)(b)—which references Restatement (Second) Conflicts of Law § 188—governs. The trial court then proceeded to analyze section 188 and held that California law governs this case. We hold Synthes is entitled to relief.

Our scope of review is plenary. *Warehime v. Warehime*, 580 Pa. 201, 209 n. 7, 860 A.2d 41, 46 n. 7 (2004).

[O]ur review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential". This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an

---

**3.** We observe that Appellees purport to quote from *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal.App.4th 881, 72 Cal.Rptr.2d 73 (1998), as follows:

Moreover, contrary to Synthes' arguments, California courts would not enforce the Pennsylvania choice-of-law provision at issue. *See Application Group, Inc. v. Hunter Group*, 61 Cal.App.4th 881, 72 Cal.Rptr.2d 73, 84–89 (1998) (holding that restrictive covenants were unenforceable notwithstanding the presence of a **Pennsylvania** choice-of-law clause, "which is void and unenforceable because it attempts to evade California law and public policy.")

Appellees' Brief at 13 (emphasis added) (allegedly quoting from *Application Grp.*, 72 Cal. Rptr.2d at 84–89). Initially, the *Application Group* decision considered **Maryland**—not Pennsylvania—law. *See Application Grp.*, 72 Cal.Rptr.2d at 75. Further, the quoted language appears nowhere in that decision. Curiously, the quoted language—minus the word "which"—appears in two pleadings, each of which was filed by a party adverse to Synthes. *See Hayes v. Synthes USA Sales, LLC*, 2:12–cv–1672 (E.D. Cal. June 25, 2012) (page six of Pl.'s Mem. of Points and Authorities in Support of Pl.'s Mot. for Summ. J. or, in the Alternative, Summ. Adjudication); *Payne v. Synthes USA Sales, LLC*, 3:12–cv–1456 (S.D. Cal. June 19, 2012) (page seven of Pl.'s Mem. of Points and Authorities in Supp. of Pl.'s Mot. for Summ. J. or, in the Alternative, Partial Sum. J.). Neither pleading, however, cited *Application Group* or any authority in support of the quoted language.

appellate court is directed to "examine the record to determine if there were any apparently reasonable grounds for the action of the court below."

*Id.* at 209, 860 A.2d at 46 (citations omitted); *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 645, 828 A.2d 995, 1000 (2003) (*"Summit"*) (standard of review is abuse of discretion). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Mielcuszny v. Rosol,* 317 Pa. 91, 93–94, 176 A. 236, 237 (1934); *accord Maher v. Maher,* 575 Pa. 181, 184–85, 835 A.2d 1281, 1283 (2003) (citation omitted). "[W]e do not inquire into the merits of the controversy.... Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court." *Summit,* 573 Pa. at 645–46, 828 A.2d at 1000 (alterations and citations omitted); *All–Pak, Inc. v. Johnston,* 694 A.2d 347, 350 (Pa.Super.1997).

▮ A trial court has "apparently reasonable grounds" for granting the extraordinary remedy of preliminary injunctive relief if it properly finds that all of the "essential prerequisites" are satisfied. *Summit,* 573 Pa. at 646, 828 A.2d at 1001; *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 252, 602 A.2d 1277, 1282–83 (1992); *Schaeffer v. Frey,* 403 Pa.Super. 560, 589 A.2d 752, 755 (1991).

There are six "essential prerequisites" that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) "that the injunction is necessary to prevent immedi-ate and irreparable harm that cannot be adequately compensated by damages"; 2) "that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; 3) "that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; 4) "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; 5) "that the injunction it seeks is reasonably suited to abate the offending activity"; and, 6) "that a preliminary injunction will not adversely affect the public interest." The burden is on the party who requested preliminary injunctive relief....

*Warehime,* 580 Pa. at 209–10, 860 A.2d at 46–47 (citation omitted). A decision addressing a request for a preliminary injunction thus requires extensive fact-finding by the trial court because the moving party must establish it is likely to prevail on the merits. *See Summit,* 573 Pa. at 647, 828 A.2d at 1001; *Anglo–American Ins. Co. v. Molin,* 547 Pa. 504, 513, 691 A.2d 929, 933 (1997) (reversing grant of preliminary injunctive relief because moving party failed to establish clear right to relief). Simply, the moving party must establish a *prima facie* right to relief. *Shenango Valley Osteopathic Hosp. v. Dep't of Health of Pa.,* 499 Pa. 39, 50–51, 451 A.2d 434, 439–40 (1982) (vacating preliminary injunction because party failed to establish right to relief); *Keystone Guild, Inc. v. Pappas,* 399 Pa. 46, 49, 159 A.2d 681, 683 (1960) (reversing preliminary injunction because, *inter alia,* there was no evidence of breach of restrictive cove-

nant).[4] If the moving party's right to relief is unclear, then a preliminary injunction should not issue. *Anglo–American Ins. Co.*, 547 Pa. at 513–14, 691 A.2d at 933–34.

To establish a clear right to relief on a claim for breach of restrictive covenants of an employment contract, a party must, *inter alia*, demonstrate the following:

> In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent. Our law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer. However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living.

*Hess v. Gebhard & Co.*, 570 Pa. 148, 157, 808 A.2d 912, 917 (2002) (citations and quotation marks omitted); *All–Pak, Inc.*, 694 A.2d at 350–51 (noting restrictive covenants are strictly construed against employer). "Pennsylvania cases have recognized that trade secrets of an employer, customer goodwill and specialized training and skills acquired from the employer are all legitimate interests protect[a]ble through a general restrictive covenant." *Thermo–Guard, Inc. v. Cochran*, 408 Pa.Super. 54, 596 A.2d 188, 193–94 (1991) (citation omitted). In essence, the court must examine and balance the employer's legitimate business interest, the "individual's right to work, the public's right to unrestrained competition, and the right to contract ... in determining whether to enforce a restrictive covenant." *Hess*, 570 Pa. at 158, 808 A.2d at 917 (citation omitted); *see Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 184, 207 A.2d 768, 772 (1965); *Thermo–Guard, Inc.*, 596 A.2d at 193.

In construing a restrictive covenant, "[c]ourts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 429 (2001) (citations and quotation marks omitted). "[I]t is not the function of this Court to re-write it, or to give it a construction in conflict with ... the accepted and plain meaning of the

---

4. The United States Supreme Court stressed, "The point remains that the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 1219, 163 L.Ed.2d 1017, 1030 (2006); *see also Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir.1990). Similarly:

> To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. Whether success is likely requires examination of legal principles controlling the claim and potential defenses available to the opposing party. The mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action.

*Stilp v. Contino*, 629 F.Supp.2d 449, 457 (M.D.Pa.2009) (citations omitted). We recognize "that federal court decisions do not control the determinations of the Superior Court." *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa.Super.2012) (citations omitted).

language used." *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 144, 302 A.2d 347, 351 (1973) (citation omitted).

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Murphy*, 565 Pa. at 591, 777 A.2d at 429–30 (citations and quotation marks omitted).

▮ A court may employ the last antecedent rule in construing statutes and contracts:

[T]he grammatical "rule of the last antecedent," according to which a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows. *See* 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is "quite sensible as a matter of grammar."

*Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S.Ct. 376, 380, 157 L.Ed.2d 333, 340 (2003) (citation omitted); *Rendell v. Pa. State Ethics Comm'n*, 603 Pa. 292, 304, 983 A.2d 708, 715 (2009).

For example, in *Rendell*, our Supreme Court construed the following definition of "business" in 65 Pa.C.S. § 1102:

Any corporation, partnership, sole proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, holding company, joint stock company, receivership, trust or any legal entity organized for profit.

*Rendell*, 603 Pa. at 296, 983 A.2d at 710. The penultimate question before the Court was whether the limiting clause "organized for profit" applied **only** to the preceding clause "any legal entity" or whether the limiting clause applied to **all** of the preceding entities, *e.g.*, "receivership."[5] *Id.* at 300, 983 A.2d at 712–13.

The Court, applying the rules of statutory construction, including the last antecedent rule, held that "organized for profit" was limited to "legal entity":

For one, when interpreting the "organized for profit" qualifier in context, it is notable that the limitation appears at the end of the definition, and thus, under the last-antecedent principle of statutory construction as applied in other cases, *see, e.g., McKinley v. Penn., DOT*, 564 Pa. 565, 577 n. 10, 769 A.2d 1153, 1160 n. 10 (2001), it only to applies to the final item, "any legal entity." *See generally Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 569 F.Supp.2d 1189, 1197 (D.Kan.2008) (suggesting that the last antecedent rule may be applied where the court finds the language to be ambiguous). As such, the interpretation urged by [a]p-

---

**5.** The Court answered this question in order to address the ultimate issue of whether the definition of "business" included non-profit

entities. *Rendell*, 603 Pa. at 306, 983 A.2d at 716–17. The Court held that the term "business" included non-profit entities. *Id.*

pellees would be problematic because it would apply the "organized for profit" qualifier to receiverships; such receiverships are not by nature organized for profit—although theoretically they may generate a profit, at least in a generic sense (as [a]ppellees point out)—but rather, for the protection of an entity's assets and the ultimate distribution of those assets to creditors.

*Id.* at 304–05, 983 A.2d at 715–16.

 In the case before us, the 2007 Agreement provides:

This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania....

Ex. B. to Appellant's Compl. at 5.

The phrase at issue is "Pennsylvania law." Immediately following that phrase is the clause "applicable to contracts entered into and performed in Pennsylvania." This clause plainly contains qualifying words that constitute a limitation. *See Murphy,* 565 Pa. at 591, 777 A.2d at 429; *White,* 451 Pa. at 144, 302 A.2d at 351; *cf. Barnhart,* 540 U.S. at 26, 124 S.Ct. at 381, 157 L.Ed.2d at 340; *Rendell,* 603 Pa. at 304, 983 A.2d at 715. Similar to our Supreme Court in *Rendell,* which held that the clause "organized for profit" limited the immediately preceding phrase "legal entity," we conclude the clause "applicable to contracts entered into and performed in Pennsylvania" limits the immediately preceding phrase "Pennsylvania law." *Cf. Rendell,* 603 Pa. at 304, 983 A.2d at 715; *cf. also Barnhart,* 540 U.S. at 26, 124 S.Ct. at 381, 157 L.Ed.2d at 340. Thus, the

phrase "Pennsylvania law" is unequivocally qualified by the subsequent clause "applicable to contracts entered into and performed in Pennsylvania."[6] *See Murphy,* 565 Pa. at 591, 777 A.2d at 429; *White,* 451 Pa. at 144, 302 A.2d at 351; *cf. Barnhart,* 540 U.S. at 26, 124 S.Ct. at 381, 157 L.Ed.2d at 340; *Rendell,* 603 Pa. at 304, 983 A.2d at 715.

In sum, because the trial court misconstrued the restrictive clause, it erroneously held that the choice-of-law provision was applicable to contracts performed in Pennsylvania only.[7] *See Summit,* 573 Pa. at 645–46, 828 A.2d at 1000. We disavow any interpretation requiring a determination of the actual place of performance. Moreover, the parties have not cited, and we have not discerned, any other indicia of meaning that would require us to disregard the sensible grammatical construction. *See Murphy,* 565 Pa. at 591, 777 A.2d at 429; *White,* 451 Pa. at 144, 302 A.2d at 351; *cf. Barnhart,* 540 U.S. at 26, 124 S.Ct. at 381, 157 L.Ed.2d at 340.

 Furthermore, Pennsylvania courts consider whether section 187(1) applies before considering section 187(2). *See Chestnut v. Pediatric Homecare of Am., Inc.,* 420 Pa.Super. 598, 617 A.2d 347, 350–51 (1992) (explaining that because parties could not have explicitly agreed to particular performance at issue under section 187(1), section 187(2)(b) applied); *Smith v. Commonwealth Nat'l Bank,* 384 Pa.Super. 65, 557 A.2d 775, 777 (1989) (citing, *inter alia,* section 187 for proposition that "Choice of law provisions in contracts will generally be given effect.").[8]

---

**6.** We observe that the noun "contracts" is also limited by the subsequent qualifying phrase "entered into and performed in Pennsylvania" and that "entered" and "performed" are verbal adjectives that describe sequential steps of a process.

**7.** The trial court's construction, we also observe, renders the choice-of-law provision superfluous.

**8.** *Accord Kirschbaum v. WRGSB Assocs.,* 243 F.3d 145, 151 (3d Cir.2001); *City of Phila. v. One Reading Ctr. Assocs.,* 143 F.Supp.2d 508, 512 (E.D.Pa.2001); *see also Miller v. Allstate*

In *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden,* 448 F.3d 918 (6th Cir.2006), the Court applied section 187. In *Durden,* two women claimed they were the surviving spouse of the decedent. *Id.* at 920. The Sixth Circuit had to resolve which claimant should receive the benefits from the decedent's pension plan. *Id.* In so resolving, the Court construed the following choice-of-law provision: the plan "shall be construed, governed and administered in accordance with the laws of the State of Michigan except where otherwise required by Federal law." *Id.* at 921. One of the women alleged that the Employee Retirement Income Security Act of 1974 [9] ("ERISA"), a federal law, preempted the choice-of-law provision. *Id.*

The *Durden* panel ascertained whether the parties to the pension plan

> could have resolved the particular issue being litigated by an explicit provision in the contract. If they could have, then the choice of law provision is enforceable. Rest.2d Conflict of Laws § 187(1). Under such circumstances, there are no exceptions. In this case, we must evaluate whether the Plan could have contained an express provision addressing the determination of which of two claim-

ants is a surviving spouse and, therefore, entitled to survivor's benefits. ERISA provides that the terms of a plan alone cannot prevent survivor's benefits from being paid to the surviving spouse. While plan documents may designate someone other than the surviving spouse to receive such benefits **if the spouse has signed a written, notarized consent form,** the parties to the plan alone do not have the power to grant survivor's benefits to *anyone who is not* the surviving spouse under applicable law. Therefore, the parties to the Plan could not have resolved the issue of which claimant is entitled to ... benefits by explicit provision in the contract.

*Id.* at 923–24 (some citations omitted). The Fifth Circuit concluded that the agreement at issue, *i.e.,* the pension plan, could not have permitted the decedent to grant benefits to someone other than his spouse without her signed consent. *Id.* Accordingly, because this particular issue could **not** have been resolved by an explicit provision in the agreement, the *Durden* Court concluded section 187(1) could not apply and it was required to proceed to and construe section 187(2).[10] *Id.* at 924.

*Ins. Co.,* 763 A.2d 401, 403 (Pa.Super.2000) (applying section 187(1) and concluding parties' contractual choice-of-law provision controlled; accordingly, court did not have to apply Pennsylvania's hybrid choice-of-law principles); *cf. Assicurazioni Generali, S.P.A. v. Clover,* 195 F.3d 161, 164 (3d Cir.1999) (holding lower court erred by analyzing section 188 without ascertaining whether parties implicitly chose relevant law under section 187). The United States Court of Appeals for the Fifth Circuit aptly summarized the framework:

> Generally speaking, under section 187(1) the law of the jurisdiction chosen by the parties will be applied to the issue in question if the parties could have resolved the issue by an explicit provision in their agreement directed to that issue. Even if that is **not** the case, the law of the chosen jurisdic-

tion will still apply unless **either** of conditions (a) and (b) following is met, *viz* (a) the chosen state has no substantial relationship to the parties or the transaction, **and** "there is no other reasonable basis for the parties' choice," or (b) the application of the chosen state's law "would be contrary to a fundamental policy of a state" whose law would be the applicable law determined under the section 188 analysis in the absence of an effective choice of law by the parties.

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.,* 585 F.3d 236, 242 (5th Cir. 2009) ("*Great Lakes* ") (footnote omitted).

**9.** 29 U.S.C. §§ 1001–1461.

**10.** *Accord DCS Sanitation Mgmt., Inc. v. Castillo,* 435 F.3d 892, 896 (8th Cir.2006) (noting district court erred by applying section 187(2)

Instantly, thé parties dispute whether Harrison violated the 2007 Agreement by soliciting Synthes's former customers. *See* Synthes's Compl. at 17. The particular issue—non-solicitation—is one that the parties "could have"—and did—explicitly address in the 2007 Agreement. *See* Ex. B. to Synthes's Compl.; *see also .Smith,* 557 A.2d at 777; Restatement (Second) of Conflict of Law § 187(1); *cf. Chestnut,* 617 A.2d at 350–51 (noting, "Under section 187(1), the parties could not have explicitly agreed to make appellant tender payment for redemption of shares if its capital was impaired at the time."). The parties are not contending that, *e.g.,* a party lacked the capacity to contract or the contract is illegal. *See* Restatement (Second) of Conflict of Law § 187. This case, therefore, is unlike *Durden,* in which the particular issue could not have been explicitly resolved. *See Durden,* 448 F.3d at 923–24. In sum, because the trial court misapplied the law, we reverse the order below and remand for further proceedings. *See Summit,* 573 Pa. at 645–46, 828 A.2d at 1000.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

without ascertaining whether 187(1) governs because "Section 187(2) applies only when section 187(1) does **not** govern." (emphasis added)).