J-A25005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PFB MEMBERS' SERVICE CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TODD A. ECKENROAD | |
| Appellant | No. 801 MDA 2019 |

Appeal from the Order Entered April 23, 2019
In the Court of Common Pleas of Cumberland County
Civil Division at No: 2019-02114

BEFORE: STABILE, J., MCLAUGHLIN, J., AND MUSMANNO, J.

MEMORANDUM BY STABILE, J. **FILED APRIL 23, 2020**

Appellant, Todd A. Eckenroad, an accountant, appeals from an order granting Appellee, PFB Members' Service Corporation, a preliminary injunction enforcing a noncompete covenant[1] in Appellant's employment agreement. The injunction decreed that for two years following Appellant's resignation from Appellee, he could not provide accounting services to clients of Appellee whom he served during his final two years of employment, whether or not they continue to remain Appellee's clients. The injunction was not limited to any geographic area. We hold that the court abused its discretion by imposing these terms in its order, and we vacate the preliminary injunction and remand this case for further proceedings.

---

[1] Pennsylvania courts use the terms "noncompete covenant" and "restrictive covenant" interchangeably. We will use "noncompete covenant" in this opinion.

On November 30, 2018, Appellant resigned from his position as an accountant for Appellee. On March 4, 2019, Appellee filed a civil action alleging that Appellant breached the noncompete covenant in his employment agreement. Two days later, Appellee filed a petition seeking a preliminary injunction against Appellant. On April 2, 2019, the trial court convened an evidentiary hearing on Appellee's petition for injunctive relief.

On April 23, 2019, the trial court issued an opinion and order granting Appellee a preliminary injunction. The court found the following facts:

> [Appellee] is a business organization with its principal office in Camp Hill, Cumberland County, Pennsylvania, that provides business services, primarily to Pennsylvania farmers, including accounting, payroll, and tax services.[2] [Appellant] is an adult individual residing in New Enterprise, Bedford County, Pennsylvania. From August 1, 2003, until November 30, 2018, when he left his employment with the title of senior account supervisor, [Appellant] was an at-will employee of [Appellee], and in the two years preceding his departure his assigned geographic territory was Bedford and Fulton Counties, Pennsylvania.
>
> As an account supervisor, [Appellant]'s duties consisted of providing business and accounting services, including payroll and tax preparation services, to [Appellee]'s clients. Prior to his departure, he had been servicing 104 such clients, which was in excess of the average clientele of 75 serviced by the remaining 34 account supervisors. Toward the end of 2018, [Appellee] announced an increase in fees for its services, as well as a reduction in compensation to its account supervisors, effective

---

[2] Appellee is not simply an accounting firm or tax preparer. It is a general farm membership organization that provides an array of services to its members. For an annual membership fee, members can access discounts on rental cars, hotels, supplies, as well as access to Appellee's warehouse facility, which sells agricultural products. For an additional fee, members can purchase accounting services (including tax preparation) and business analysis. N.T., 4/2/19, at 33-34.

January 1, 2019. The increase in fees precipitated a termination of their relationship with [Appellee] by a number of clients. By a letter dated November 16, 2018, [Appellant] advised [Appellee] of his intention to leave his employment, indicating:

> Because of the recent changes the company has decided to make, I can no longer continue my employment . . . . My last day will be November 30, 2018. There is just no way my family and I can make it with the future loss of income that will be a result of the changes that have been made with the fee schedule and employee compensation package. I have already had clients leave and others that are planning to leave next year due to the fee increase. . . .

> Please know that I was not considering this until I was put in a position of needing to make this very difficult decision for the welfare of my family. I want to part on good terms.

In leaving his position with [Appellee], [Appellant] did not advise any of [Appellee]'s clients in advance of his decision to do so. However, as of the hearing herein[,] 48 of the 104 clients he had been servicing had either cancelled or not renewed their relationship with [Appellee].[3]

Shortly after leaving [Appellee]'s employment, [Appellant] opened "Eckenroad Accounting Services," which he operates out of his home in Bedford County, Pennsylvania, and which is "dedicated to providing accounting services to small businesses and individuals in the area." Services offered include personal tax preparation, partnership tax preparation, corporate tax preparation, tax planning visits, payroll quarterlies preparation, W-2 & 1099 preparation, and a free initial consultation.

---

[3] This appears to be a minor misstatement. Based on our review of the preliminary injunction hearing transcript, we think the trial court meant to say that the number of Appellee's clients in Bedford and Fulton Counties dropped from 104 to 48 after Appellant's resignation. Thus, 56 of Appellee's clients cancelled or declined to renew their memberships, not 48.

In assembling a clientele for his new business, which appears to be largely oriented toward preparation of tax returns and does not provide business consulting services, [Appellant] did not solicit or accept any clients of [Appellee] who remained with [Appellee]. However, he did accept about 20 former clients who had chosen to terminate their relationship with [Appellee].

The [July 22,] 2003 employment agreement executed by the parties contemplated [Appellant]'s provision of "farm management counseling and tax reporting services to clients of [Appellee] in accordance with the procedures established from time to time by [Appellee] and under the supervision and direction of [Appellee]." It indicated that [Appellant] would "be compensated in accordance with an Incentive Wage Program as established and amended from time to time by [Appellee] which [was to] be based upon, but not limited to, factors such as length of service, net gross revenue produced from accounts served, and other performance based upon standards to be determined by [Appellee]."

The noncompete provision contained in [paragraph 6 of] the employment agreement provided, in pertinent part, as follows:

> B. Employee hereby provisions and agrees with Employer that, during the "Noncompete Period" and within the "Noncompete Area," Employee shall not directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity, engage in or participate in any business which provides any goods or services competitive in any way with the goods and services provided by Employee for Employer under this Agreement nor shall Employee, directly or indirectly, **solicit the business of any customers/clients of the Employer or perform for such customers or clients**, nor solicit the performance, neither in person nor through any other entity with which he/she is associated, any of the services of the nature of those performed by Employee for Employer.
>
> C. The "Noncompete Period" shall commence on the date hereof and terminate two (2) years after

expiration or termination of Employee's employment with Employer under this Agreement. **The "Noncompete Area" shall be the geographic territory or territories assigned to Employee in the last two (2) years of his/her employment with Employer and shall be limited only to PFB members in said territory or territories** . . .

Trial Court Opinion, 4/23/19, at 1-3 (emphasis added).

The trial court did not mention another provision in the noncompete covenant. Paragraph 6(E) states:

E. All parties hereto acknowledge the necessity of protection against the competition of the Employee and that the nature and scope of such protection has been carefully considered by the parties. Any geographic area covered is expressly acknowledged and agreed to be fair, reasonable and necessary. In the event any covenant in this paragraph . . . is held to be illegal, invalid or unenforceable because of the . . . geographic area covered thereby, or otherwise, the parties agree that the tribunal making such determination shall have the power to reduce . . . the area and/or other provisions of any such covenant to the maximum permissible and to include as much of its nature and scope as to render it enforceable, and in its reduced form said covenant shall be valid, legal and enforceable.

Employment Agreement, ¶ 6(E).

Appellee's Human Resource Director, Kerri Zeigler, testified that Appellant serviced clients in Blair County as well as Bedford and Fulton Counties, and subsequent to Appellant's resignation, Appellee's clientele in Bedford, Fulton and Blair Counties fell from 104 to 48. Notes of Testimony, Hearing ("N.T."), 4/2/19, at 21. Zeigler asserted that a fifty percent reduction in clients was unusual, and anything more than a ten percent reduction in

clients following an employee's departure "would stand out." *Id.* at 28. The loss of clients, said Zeigler, cost Appellee $87,985.00 in fees and $21,446.82 in refunds. *Id.* at 23-24. In January 2019, Zeigler learned that Appellant went into business for himself and had his own website. *Id.* at 28. Appellant did not dispute that he had his own website when counsel for Appellee referred to it during his testimony. *Id.* at 57.

Appellant testified that his assigned territory for Appellee included Bedford and Fulton Counties, but not Blair County. *Id.* at 73. The trial court accepted Appellant's testimony on this point as true. Trial Court Opinion, 4/23/19, at 1. Appellant admitting preparing tax returns for seventeen of Appellee's former clients after he left Appellee. N.T., 4/2/19, at 58-71.

The noncompete covenant, Appellant argued, prohibits him only from soliciting or servicing persons who continue to remain Appellee's clients, but it did not bar him from servicing persons who are no longer clients of Appellee and who approached him after he left Appellee. Appellant's Brief in Opposition to Appellee's Petition for Preliminary Injunction, 4/17/19, at 8-9. Appellant testified that (1) none of the twenty or so clients in question are currently clients of Appellee; (2) he never approached them about becoming his clients; (3) before leaving Appellee, he never told any of his clients that he was leaving; (4) after leaving, he did not solicit business from any client of Appellee; (5) the first question he asks anyone who approaches him is whether he is a current client of Appellee; and (6) if the person answers

affirmatively, he responds that he cannot serve him for two years. N.T., 4/2/19, at 73-75.

On April 23, 2019, the court held that the noncompete covenant was enforceable in part, stating:

> [A] number of factors militate against a full application of the restrictive covenant as drafted against [Appellant] at this preliminary stage of the case when [Appellee]'s evidence is tested by the prerequisites for a preliminary injunction, including the likelihood of ultimate success. First, [Appellant]'s termination of employment was arguably involuntary and without fault on his part, in the sense that it resulted from policy changes made by [Appellee] which rendered his continued employment economically unfeasible.
>
> Second, while [Appellant]'s accounting business is in part competitive, with [Appellee]'s operation, it appears to be more of a typical small tax preparation service than a multi-service business consultant for agricultural enterprises. Third, the effect of a two year proscription on [Appellant]'s participation in his home county "in any business which provides any . . . services competitive in any way with the . . . services provided" under the agreement, however minuscule the degree of competition, would dramatically affect [Appellant]'s ability to practice his profession without a proportional benefit to [Appellee].
>
> On the other hand, it does appear to the court that [Appellee] is likely to prevail on the issue of whether [Appellant]'s covenant of accounting services to clients of [Appellee] he served in the last two years of his employment is enjoinable pursuant to a reasonable application of the covenant not to compete. In this regard, the loss of these clients is not insignificant to [Appellee], and it is not unreasonable to attribute it in part to the availability of [Appellant]'s accounting practice in the prohibited geographic area.

Trial Court Opinion, 4/23/19, at 6. The court entered a preliminary injunction prohibiting Appellant "from providing accounting services to clients he served

- 7 -

on behalf of [Appellee] during the last two years of his employment with [Appellee], for the period prescribed in the parties' employment agreement dated July 22, 2003." *Id.* at 6-7.

Appellant timely appealed to this Court pursuant to Pa.R.A.P. 311(a)(4), which permits automatic appeals from orders granting injunctions except in circumstances not relevant here. Both Appellant and the trial court complied with Pa.R.A.P. 1925. The trial court wrote in its Rule 1925 opinion:

> To the extent that [Appellant] . . . maintains that the court expanded the restrictive covenant at issue beyond its terms by disregarding the non-compete area and including clients who were not currently clients of [Appellee], the court would suggest that the preliminary injunction issued was far narrower than the covenant authorized. The evidence at the hearing tended to show that [Appellant] was operating an accounting business in Bedford County, Pennsylvania, which was in the non-compete area and was providing goods and services "competitive in any way with the goods and services provided" by him under the employment agreement. The first portion of the covenant not to compete contained an absolute prohibition on such a business, but the preliminary injunction issued limited its effect to service by the business of [Appellant]'s former clients within the prescribed period.

Pa.R.A.P. 1925 Opinion, 5/23/19, at 2.

Appellant raises three issues in this appeal:

1. The noncompete [covenant] in this case is limited to certain counties and only applies to active members of PFB in those counties. Should this Court dissolve a preliminary injunction that enjoins [Appellant] from earning a living by serving former clients regardless of his geographic location, the former clients' geographic location, and the former clients' membership status with Appellee?

2. The noncompete [covenant] in this case is limited to only "PFB members." There is no evidence that [Appellant] has ever served

- 8 -

a client that was a PFB member at the time. Should this Court reverse the trial court and dissolve the preliminary injunction?

3. Under Pennsylvania law, noncompete contracts are construed strictly and against the employer. To the extent the phrase "PFB members" in the noncompete [covenant] is ambiguous as to whether it includes only current members or also former members, should that ambiguity be resolved in [Appellant]'s favor?

Appellant's Brief at 5. We agree with Appellant that the trial court abused its discretion by omitting any geographical restriction from the injunction and by prohibiting Appellant from representing Appellee's former clients.

The purpose of a preliminary injunction is to preserve the *status quo* that existed before the acts complained of and thereby prevent irreparable injury. **Santoro v. Morse**, 781 A.2d 1220, 1229 (Pa. Super. 2001). The moving party must satisfy six requisites in order to obtain a preliminary injunction: (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the moving party is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) an injunction will not harm the public interest. **Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.**, 828 A.2d 995, 1001 (Pa.

2003). We review orders granting preliminary injunctions for abuse of discretion. *Id.* at 1000. "We do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id.* This standard of review is "highly deferential." *Duquesne Light Company v. Longue Vue Club*, 63 A.3d 270, 275 (Pa. Super. 2013).

Contract interpretation is a question of law, so our review of the trial court's construction of contract language is *de novo* and our scope of review is plenary. *Maisano v. Avery*, 204 A.3d 515, 520 (Pa. Super. 2019). The fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties. *Id.*

> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used.

*Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1274-75 (Pa. Super. 2002). Moreover, "clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects.

- 10 -

Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement." **Dominic's, Inc. v. Tony's Famous Tomato Pie Bar & Restaurant, Inc.**, 219 A.3d 259, 269 (Pa. Super. 2019).

Contract principles apply to employment agreements, **Profit Wize**, 812 A.2d at 1274-75, and, more particularly, to noncompete covenants within employment agreements. **Missett v. Hub Inter. Pennsylvania, LLC**, 6 A.3d 530, 541 (Pa. Super. 2010). In construing a noncompete covenant, "[c]ourts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone." **Synthes USA Sales, LLC v. Harrison**, 83 A.3d 242, 250 (Pa. Super. 2013). "[I]t is not the function of this Court to re-write it, or to give it a construction in conflict with . . . the accepted and plain meaning of the language used." **Id.** at 250-51.

Noncompete covenants in employment agreements allow employers to prevent employees and agents from learning their business practices and then moving into competition with them. **Hess v. Gebhard & Co.**, 808 A.2d 912, 918 (Pa. 2002). This enables employers to protect their legitimate business interests, client base, good will and investments in employees. **WellSpan Health v. Bayliss**, 869 A.2d 990, 996 (Pa. Super. 2005). If an employee's conduct falls within the four corners of a noncompete covenant, several other

conditions must be satisfied for that covenant to be enforceable.  Specifically, the covenant must be (1) ancillary to the employment relationship, (2) reasonably necessary for the protection of the employer, and (3) reasonable in duration and geographic reach.  ***Missett***, 6 A.3d at 538.  The covenant is reasonably limited if it is "within such territory and during such time as may be reasonably necessary for the protection of the employer . . . without imposing undue hardship on the employee."  ***Morgan's Home Equipment Corp. v. Martucci***, 136 A.2d 838, 844 (Pa. 1957).  Post-employment restrictive covenants

> are subject to a more stringent test of reasonableness . . . .  This heightened scrutiny stems from a historical reluctance on the part of our courts to enforce any contracts in restraint of free trade, particularly where they restrain an individual from earning a living at his trade.  This close scrutiny also stems from our recognition of the inherently unequal bargaining positions of employer and employee when entering into such agreements.  The determination of whether a post-employment restrictive covenant is reasonable, and therefore enforceable, is a factual one which requires the court to consider all the facts and circumstances.  A restrictive covenant found to be reasonable in one case may be unreasonable in others.

***Insulation Corp. of America v. Brobston***, 667 A.2d 729, 733–34 (Pa. Super. 1995).

The first issue raised by Appellant is whether the trial court abused its discretion by refusing to include any geographic limitation in the injunction. We hold that it did, because the plain language of the noncompete covenant did not authorize an injunction without any geographic limitation against

Appellant. Such an injunction not only was far broader than was necessary to protect Appellee's interests, but it also was overly harmful to Appellant.

The plain language of the noncompete covenant compels this outcome. Paragraph 6B of the noncompete provision prohibits Appellant from competing with Appellee during the "Noncompete Period" and within the "Noncompete Area". The "Noncompete Area" is defined as the geographic area assigned to Appellant in the last two (2) years of employment, *id.*, a limitation that the parties "expressly acknowledged and agreed to be fair, reasonable and necessary", Employment Agreement, ¶ 6(E). The court credited Appellant's testimony that his assigned territory during his final two years of employment was Bedford and Fulton Counties. Under the plain language of paragraphs 6(B), (C) and (E), the court should have limited any injunction to these counties. *Synthes USA Sales, LLC*, 83 A.3d at 250. The covenant did not authorize the court to impose an injunction without any geographic limitation. *Id.* In addition, the geographic scope of the injunction was improper because it was far broader than necessary to protect Appellee's interests, *Missett*, 6 A.3d at 538, and posed an undue hardship on Appellant's ability to earn a living. *Morgan's Home Equipment Corp.*, 136 A.2d at 844. Stated in terms of the six-part *Summit Towne Centre* test, Appellee is not likely to prevail on the merits of this issue (prong 4), an injunction without any geographic limitation is not reasonably tailored to abate any offending activity (prong 5),

and such an injunction will substantially harm Appellant's interests (prong 2). *Id.*, 828 A.2d at 1001.

Next, Appellant argues that the trial court abused its discretion by prohibiting him from servicing individuals and entities who no longer are clients of Appellee. We agree, based on our review of paragraphs 6(B) and (C) of the noncompete covenant and the evidence of record.

Paragraph 6(B) provides that for two years following the end of employment, Appellant cannot solicit the business or perform services for Appellee's "customers/clients" within the "Noncompete Area" that are "of the nature" of the services he performed for Appellee. Paragraph 6(C) provides that the Noncompete Area shall be limited to "PFB members." Construing these provisions in combination, as the law requires us to do, *Dominic's, Inc.*, 219 A.3d at 269, we think it clear that "customers/clients" is synonymous with "PFB members." Moreover, the plain meaning of the terms "clients," "customers" and "members" is current, existing clients, customers and members. Without the modifier "former", these terms do not encompass past clients, customers or members. Had the parties intended to extend these terms to former clients, customers, or members, they would have expressly included "former" in the text. Stated more simply, one cannot be a customer/client of Appellee if they no longer are PFB members. Thus, Appellant is free to provide services to former customers, clients or members

of Appellee, *i.e.*, customers, clients or members who left Appellee while Appellant was still employed by Appellee.[4]

Appellant's unrebutted testimony shows that he complied with the noncompete covenant by not soliciting or performing services for Appellee's current clients or customers that are PFB members within his formerly assigned territory after leaving Appellee. After leaving Appellee, Appellant did not solicit business from Appellee's clients or customers, and he only accepted business from Appellee's former clients or customers who decided, on their own, to approach him following his departure from Appellee. Before accepting their business, he made sure they were not current clients or customers of Appellee.

Therefore, the injunction against representing former clients and customers violates both prong 4 of the **Summit Towne Centre** test, since Appellee is not likely to prevail on this issue in later proceedings, and prong 5, since it is not reasonably tailored to abate any offending activity.

The trial court attempted to justify issuance of its preliminary injunction against servicing former clients of Appellee without any geographic limitation

_____

[4] Although we cannot locate any Pennsylvania decision on point, multiple other jurisdictions have held that noncompete covenants that purport to apply to all past clients are unreasonable because they are "so broad[] as to prohibit seemingly harmless conduct." **Seach v. Richards, Dieterle & Co.**, 439 N.E.2d 208, 214 (Ind. App. 1982); **Leon M. Reimer & Co., P.C. v. Cipolla**, 929 F. Supp. 154, 159 (S.D.N.Y. 1996) (collecting cases).

by "suggest[ing] that the preliminary injunction issued was far narrower than the covenant authorized." Pa.R.A.P. 1925 Opinion, 5/23/19, at 2. We disagree, because the covenant did not authorize the terms of the injunction. The law requires that when the meaning of a noncompete covenant is clear, the court must assume that the parties mean what they say and enforce the covenant in accordance with its plain meaning. *Synthes USA Sales, LLC*, 83 A.3d at 250-51. In this case, the plain meaning of the noncompete covenant limited its reach for two (2) years after Appellant left Appellee's employment to current clients of Appellee within Fulton and Bedford Counties. The court abused its discretion by disregarding the plain meaning of the noncompete covenant and enjoining Appellant from servicing Appellee's former clients without geographic limitation.

Accordingly, we reverse the order below and remand for further proceedings.[5]

Order reversed. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

---

[5] In his third argument, Appellant requests that we construe any ambiguity in the noncompete covenant in his favor. We need not address this argument because we have determined that the pertinent provisions of the noncompete covenant are clear and unambiguous.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/23/2020