J-A14010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LIFESTYLE REAL ESTATE LENDER, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LIFESTYLE REAL ESTATE I, LP | : | |
| | : | No. 2428 EDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered February 16, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2016-03634

BEFORE: PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:         **FILED SEPTEMBER 29, 2023**

Lifestyle Real Estate I, LP ("Borrower") appeals from the judgment entered following the trial court's grant in part of Borrower's petition to mark judgment satisfied, released, and discharged as to the satisfaction and release of an *in rem* judgment against the mortgaged premises, and deny in part of Borrower's petition to mark judgment satisfied, released, and discharged as to the guarantor liability and any deficiency balance due claims. Borrower argues that the Pennsylvania Deficiency Judgment Act ("DJA") is applicable and mandates that the guarantor liability claim has been satisfied and discharged because Lifestyle Real Estate Lender, LLC ("Lender") failed to petition to fix the fair market value of the property within six months of the Sheriff's sale, and that the trial court erred in finding that New Jersey law applied. We affirm.

For purposes of this appeal, the relevant facts are essentially undisputed; the parties hotly contest the legal ramifications of these facts. On March 6, 2015, Borrower obtained a business loan from Lender in the amount of $3,500,000 pursuant to the terms and conditions of a promissory note. The note was secured by an open-end mortgage, security agreement, and assignment of leases and rents and fixture filing. Borrower provided a vacant commercial real estate property located in Bucks County as collateral to secure the parties' commercial loan transaction. Additionally, on March 6, 2015, Lender entered into a guaranty agreement with Fred Rappaport, George Popky, Lifestyle Real Estate I GP, LLC, and Lifestyle Healthcare Group, Inc.[1] (collectively "Guarantors").[2] Guarantors, joint and severally, agreed to personally guarantee all of the payments of the principal and any debt regarding the note and the mortgage. Critically, the note and guaranty agreement expressly stated that New Jersey law applied to the terms of the commercial loan transaction.

Borrower defaulted on the note and mortgage. On June 9, 2016, Lender filed a complaint in mortgage foreclosure against Borrower's commercial

---

[1] The Guaranty Agreement lists Rappaport as a member of both Lifestyle Real Estate I GP, LLC and Lifestyle Healthcare Group, Inc.

[2] Lender is limited liability company organized under the laws of the State of Delaware, with its principal place of business in Englewood Cliffs, New Jersey. Rappaport and Popky resided in Pennsylvania. Further, Borrower, Lifestyle Real Estate I GP, LLC, and Lifestyle Healthcare Group, Inc., had the same principal place of business in Newton, Pennsylvania.

property in Bucks County. On February 21, 2018, the trial court entered an *in rem* consent judgment in the foreclosure action in favor of Lender in the amount of $4,929,375. On March 27, 2018, Lender filed a praecipe for writ of execution in mortgage foreclosure as to the commercial property. At Lender's request, a writ of execution was issued. Subsequently, on July 13, 2018, a Sheriff's sale was held, at which Lender purchased the property for $1,191.55. Lender then recorded the Sheriff's deed for the property on August 6, 2018. Notably, Lender did not file a petition to fix the fair market value of the property within six months of the Sheriff's sale.

On April 16, 2021, Lender filed a civil action against Rappaport and Deborah R. Popky, Executrix of the Estate of George Popky,[3] in the United States District Court for the Eastern District of Pennsylvania, asserting Guarantors breached the guaranty agreement, and arguing that Guarantors are liable to pay the balance of $4,929,375 owed on the *in rem* judgment. Rappaport and Deborah R. Popky filed answers, asserting that Lender's claims are barred by the DJA.[4]

On December 17, 2021, Borrower filed a petition to mark judgment satisfied, released, and discharged as to both it and Guarantors. Borrower

___

[3] We note that Popky died on December 5, 2020. Therefore, the complaint named Deborah R. Popky, Executrix of the Estate of George Popky, as a co-defendant.

[4] This federal action has been stayed pending the resolution of this appeal.

- 3 -

argued that Lender failed to file a petition to fix the fair market value of the property within six months of the Sheriff's sale; therefore, the judgment must be marked satisfied and discharged pursuant to Section 8103(d) of the DJA.[5] Lender filed a response, arguing that the DJA was inapplicable because the note and guaranty agreement are governed by New Jersey law. On August 19, 2022, the trial court granted in part and denied in part Borrower's petition. The trial court granted Borrower's petition as to the satisfaction and release of the *in rem* judgment against the commercial property. However, the trial court denied the petition as to claims related to Guarantors' liability on any

---

[5] Section 8103(d) states the following:

> If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(d); *see also Home Sav. & Loan Co. of Youngstown, Ohio v. Irongate Ventures, LLC*, 19 A.3d 1074, 1078 (Pa. Super. 2011) ("If the judgment creditor fails to file a § 8103(a) petition to fix the fair market value of the property within six months of the sheriff's sale, then the debtor may file a petition to have the judgment marked satisfied, released and discharged as a matter of law.").

alleged deficiency balance because the parties had agreed that New Jersey law controlled. On September 21, 2022, Borrower filed a notice of appeal.[6]

On appeal, Borrower raises the following questions for our review:

1. Whether the trial court erred as a matter of law in denying Borrower's Petition to Mark Judgment Satisfied, Released, and Discharged … with respect to claims related to guarantor liability where: (a) the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S. § 8103 ("DJA") applies and provides that a judgment creditor's failure to petition the court for an order fixing the fair market value within six months of the date of the property sale creates an irrebuttable presumption that the creditor is paid in full; (b) the DJA provides that the Court "shall direct the clerk to mark the judgment satisfied, released and discharged" upon presentation of facts that no petition has been filed within the six month time limited to fix the fair market value of the property sold, and Borrower presented facts that a sale occurred on July 13, 2018[,] and lender/judgment creditor has not filed a petition to fix the fair

---

[6] This Court entered an order to show cause why the appeal should not be quashed because the appeal was untimely and no post-sentence motions were filed. Borrower filed a response, arguing that its notice of appeal was filed one day late because of an e-filing error and a breakdown in the trial court's prothonotary, and that post-trial motions were unnecessary because there was no trial. This Court also issued a rule to show cause directing Borrower to praecipe for the entry of judgment. Thereafter, Borrower praeciped the trial court prothonotary to enter judgment on the decision of the trial court's order granting in part the petition to mark judgment satisfied as to the *in rem* judgment and the mortgaged premises. On February 16, 2023, the Bucks County Prothonotary entered the judgment. Ultimately, this Court noted that Borrower presented a colorable claim of a breakdown in court operations, highlighted the entry of judgment, and discharged the rule to show cause orders. We will consider the appeal properly taken from the entry of judgment. ***See Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*) (noting that when a notice of appeal is filed prior to the entry of a final judgment, appellate jurisdiction may be perfected by the entry of judgment on the docket); ***see also*** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

- 5 -

market value of the property; (c) a judgment that is marked satisfied under the DJA discharges as a matter of law the "debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt," and is not limited to satisfaction of an in rem judgment even if no personal judgment was entered against those liable; and (d) the DJA does not create any exception for an alleged deficiency owed by guarantors to survive and/or be addressed in a separate proceeding?

2. Whether the trial court erred as a matter of law in finding that New Jersey law applies to the alleged deficiency owed by the guarantors where (a) the DJA applies regardless of contract choice of law for reasons including that the property is located in Pennsylvania; (b) any agreements to waive the protections of the DJA are void; (c) lender/judgment creditor waived any choice of law or jurisdiction provisions in the Note, Mortgage, and/or Guaranty by initiating a mortgage foreclosure action in the Bucks County Court of Common Pleas, as well as a breach of guaranty agreement action in the United States District Court for the Eastern District of Pennsylvania, both of which invoke jurisdiction, venue, and the laws of Pennsylvania; (d) analysis of the Note and Guaranty with respect to choice of law was unnecessary because the judgment has been marked satisfied; and (e) the purpose of the DJA is to address any and all alleged deficiency owed, and public policy requires applying the DJA, and not New Jersey law?

Appellant's Brief at 5-6.

The trial court has the discretion to mark the judgment as satisfied, and an appellate court will not disturb its determination absent an abuse of discretion. Under Pennsylvania law, generally, an appellate court will find an abuse of discretion if the record shows that the law has been overridden or misapplied, or that the judgment exercised by the [trial c]ourt was manifestly unreasonable or motivated by partiality, prejudice, bias or ill-will.

*Gallagher v. Sheridan*, 665 A.2d 485, 486 (Pa. Super. 1995) (citations and quotation marks omitted).

- 6 -

We will address Borrower's claims together. Borrower argues that the trial court erred in denying its petition to mark the judgment satisfied and released on the guarantor liability claims. *See* Appellant's Brief at 20. More specifically, Borrower asserts that the DJA applies to discharge all deficiencies owed on a debt, and is intended to protect both debtors and guarantors and provide a final judgment in the matter. *See id.* at 20, 26, 28, 30, 38. Borrower highlights that the trial court's grant of the petition as to the mortgage foreclosure action establishes that the DJA applies in this matter. *See id.* at 25. While conceding that Guarantors did not file the petition and no judgment had been entered against them, Borrower contends the trial court should have discharged them from liability due to Lender's failure to petition the court to fix the fair market value of the property within six months of the Sheriff's sale, as required by the DJA. *See id.* at 25, 29; *see also id.* at 32-33 (arguing that the satisfaction of the judgment renders any guaranty liability discharged). Borrower maintains that the DJA applies equally to *in rem* and *in personam* actions, and that Lender was required to comply with the requirements of DJA to collect any deficiency on the judgment from both debtors and guarantors. *See id.* at 28-29, 30-31.

Borrower also contends that the trial court erred in finding that New Jersey law applies to the deficiency owed by Guarantors because the DJA would be applied in a piecemeal manner in contravention of the statutory text and substantial case law. *See id.* at 31-32, 34, 46, 47; *see also id.* at 30

(wherein Borrower argues that the trial court erred in allowing Lender to avoid the requirements of the DJA by finding that Lender's deficiency claim would be determined in its federal action). Borrower insists that the DJA applies because the property is in Pennsylvania, and any issues should be resolved according to Pennsylvania law. *See id.* at 34-36; *see also id.* at 43- 47 (stating that public policy dictates that the DJA, not New Jersey law, applies to recover the deficiency owed, as the DJA prevents Lender from a double recovery of the mortgaged property at less than fair market value as well as money from the debtor).

Borrower notes that under the DJA and related Rules of Civil Procedure, lenders must seek any deficiency owed by filing a petition to fix fair market value as part of the same matter in which judgment had been entered. *See id.* at 36-37. Additionally, Borrower argues that the DJA does not allow for waiver of its provisions, and by holding that New Jersey law applies, the trial court effectively waived the provisions of the DJA. *See id.* at 37-39 (citing, *inter alia*, 42 Pa.C.S.A. § 8103(e) ("Any agreement made by any debtor at any time, either before or after or at the time of incurring any obligation, to waive the benefits of this section or to release any obligee from compliance with the provisions hereof shall be void."). Borrower alternatively asserts that Lender waived the choice of law provision by filing the mortgage foreclosure action in Pennsylvania and initiating the federal action in the Eastern District of Pennsylvania rather than in New Jersey. *See id.* at 39-41. Borrower

accordingly suggests that any analysis of the note and guaranty was unnecessary. ***See id.*** at 41-43.

Preliminarily, the parties agree that the DJA applies in the mortgage foreclosure action on the commercial property, and that the trial court did not err in granting Borrower's petition to mark judgment satisfied, released, and discharged in this regard. ***See, e.g.,*** Appellee's Brief at 21 (acknowledging that the DJA applied to Borrower's claim regarding the commercial property in question); Brief for Appellant at 25 ("The trial court correctly granted the [p]etition as to the satisfaction and release of the judgment entered in the mortgage foreclosure action."). However, the parties disagree as to which state's law governs Lenders' claims against Guarantors. In essence, Borrower argues that because this issue arose out of a Pennsylvania real estate foreclosure, it should be determined by Pennsylvania law, specifically the DJA. Contrarily, Lender claims the matter at issue relates to the enforcement of the underlying debt, and therefore, New Jersey law, as selected by the parties in the guaranty agreement, governs.

Under the guaranty agreement, "Lender may require Guarantor to pay and perform any or all of the Guarantor's liabilities and obligations under this Guaranty and may proceed immediately against Guarantor without being required or obligated to bring any proceeding or take any action against Borrower[.]" Guaranty Agreement, 3/6/15, at 1-2. Further, "Lender may collect from the undersigned even if Lender, by foreclosing on the real

property collateral, has destroyed any right the undersigned may have to collect from borrower." ***Id.*** at 5 (capitalization omitted). Importantly, the guaranty agreement provides, in pertinent part:

> (a) <u>Governing Law</u>. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New Jersey and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state without regard to conflicts of laws considerations; and this Guaranty shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New Jersey. The undersigned agrees to submit to personal jurisdiction in the State of New Jersey in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New Jersey and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

***Id.*** at 7; ***see also*** Note, 3/6/15, at 5 (stating that New Jersey law governs the Note).[7]

_____

[7] Under New Jersey law, "[t]he action for any deficiency shall be commenced within 3 months from the date of the sale or, if confirmation is or was required, from the date of the confirmation of the sale of the mortgaged premises. In such action judgment shall be rendered and execution issued only for the balance due on the debt and interest and costs of the action." N.J.S.A. § 2A:50-2. However, the deficiency act "shall not apply to proceedings to

*(Footnote Continued Next Page)*

The Restatement (Second) of Conflict of Laws gives guidance on the choice of law relating to the foreclosure of a mortgage on property. *See Miller v. Allstate Ins. Co.*, 763 A.2d 401, 403 (Pa. Super. 2000) (noting that this Court has adopted the Restatement (Second) of Conflict of Laws to resolve issues); *see also Chestnut v. Pediatric Homecare of Am., Inc.*, 617 A.2d 347, 350-51 (Pa. Super. 1992) (applying the Restatement (Second) of Conflict of Laws to give effect to the parties' choice of law provision in a contract). Relevantly, as applied in the instant case, the Restatement (Second) on Conflict of Laws directs that the method of foreclosure of a mortgage and the resulting interests in that land are determined by the laws of the state where the property is located. *See* Restatement (Second) of Conflict of Laws § 229 ("The method for the foreclosure of a mortgage on land and the interests in the land resulting from the foreclosure are determined by the local law of the situs."); *see also Howell v. Kline*, 41 A.2d 580, 581 (Pa. Super. 1945) ("As a general principle, all questions having to do with real estate and the interpretation and effect of instruments relating to land and interests in land are resolved in accordance with the law of the state where the realty is situated."); Restatement (Second) of Conflict of Laws, § 229, cmt. a-c (noting

_____

collect a debt evidenced by a note and secured by a mortgage on real property in the following instances … [w]here the debt secured is for a business or commercial purpose other than a two-family, three-family or four-family residence in which the owner or his immediate family resides[.]" N.J.S.A. § 2A:50-2.3.

- 11 -

that the courts of the situs of the property should determine the method, time, and effect of foreclosure on the property).

However, foreclosure issues that do not affect any interest in the actual property are determined by the law governing the underlying debt. **See** Restatement (Second) of Conflict of Laws § 229, cmt. e ("Issues which do not affect any interest in the land, although they do relate to the foreclosure, are determined, on the other hand, by the law which governs the debt for which the mortgage was given. Examples of such latter issues are the mortgagee's right to hold the mortgagor liable for any deficiency remaining after foreclosure …."). To that end, a contractually agreed-upon choice-of-law provision in a debt agreement is valid and effective if "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1); **see also Synthes USA Sales, LLC v. Harrison**, 83 A.3d 242, 252 (Pa. Super. 2013) (citing to Section 187 of the Restatement (Second) of Conflict of Laws, and noting that in Pennsylvania, "[c]hoice of law provisions in contracts will generally be given effect." (citation omitted)).

Applying these principles, the trial court correctly found that New Jersey law applies, as the action is not based on any interest in the foreclosed property, but on the underlying debt, which is controlled by the choice-of-law provision in the guaranty agreement. **See** Trial Court Opinion, 11/15/22, at 7 (noting that the DJA does not apply to the Guarantors' liability, as "the laws

of New Jersey, not Pennsylvania govern the Guaranty, the debt incurred by the guarantors and any remaining contractual obligations in addition to the establishment of balance of debt owed."). In other words, the action against the guarantors does not arise from the mortgage or any interest in the underlying commercial property, but from the guaranty agreement. **See Harrison**, 83 A.3d at 252. As such, the guaranty agreement controls the choice of law.

Further, under the plain language of the guaranty agreement, Borrower fails to dispute that the discharge of its liability under the DJA did not extinguish Guarantors' liability. **See** Guaranty Agreement, 3/6/15, at 5 ("Lender may collect from the undersigned even if Lender, by foreclosing on the real property collateral, has destroyed any right the undersigned may have to collect from borrower."); **see also Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare**, ___ A.3d ___, 2023 PA Super 119, *32 (Pa. Super. 2023) (petition for reargument filed) ("When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent." (citation omitted)). In fact, Borrower points to nothing in the record that might suggest that Guarantors were unaware of these provisions, or lacked a full opportunity to consider their ramifications. Therefore, giving effect to the plain language in the guaranty agreement, we conclude that the choice of law provision, stating that the agreement was governed by the laws of the State of New Jersey, was

enforceable, despite the fact the property and foreclosure proceedings of the property were located in Pennsylvania. *See* Restatement (Second) of Conflict of Laws § 229, cmt. e; *see also Harrison*, 83 A.3d at 252.[8]

We further conclude that Lender did not waive the applicability of New Jersey law, as stated in the guaranty agreement, against Guarantors by filing the mortgage foreclosure action in Pennsylvania. Notably, under Pennsylvania law, Lender was required to file the mortgage foreclosure action in Pennsylvania, as the situs of the property is in Pennsylvania. Moreover, as noted above, Lender and Guarantors agreed that any contractual obligations regarding the debt between the parties would be subject to New Jersey law. *See* Guaranty Agreement, 3/6/15, at 7. As the action is based on the underlying debt, not the foreclosed property, we give effect to the parties'

---

[8] We note that our Supreme Court recognized that choice of law "agreements can be avoided when the terms offend Commonwealth public policy even in disputes between contracting parties." *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, 948 A.2d 752, 759 (Pa. 2008). However, Borrower has not established that the choice of law provision in the guaranty agreement violates any public policy that would void the contract. Although Borrower argues that trial court's finding would render the DJA meaningless, it ignores that the DJA was properly applied to the mortgaged premises in Pennsylvania and utilized to mark satisfied the judgment against Borrower. Further, Borrower has not demonstrated that New Jersey law will permit Lender to enjoy the windfall of a double recovery. *See, e.g., Summit Trust Co. v. Willow Business Park, L.P.*, 635 A.2d 992, 997 (N.J. Super. Ct. App. Div. 1994) (observing that a fair market value credit may be appropriate to avoid a windfall to a commercial lender when the lender pursues a deficiency judgment after foreclosing on a mortgaged property).

choice of law provision in the Guaranty Agreement, *see Harrison*, 83 A.3d at 252, and therefore, do not find waiver.[9]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023

---

[9] We also reject Borrower's reliance on 42 Pa.C.S.A. § 8103(e), as Borrower fails to cite to any place in the record where the parties explicitly agreed to waive the benefits of the DJA or to release Lender from compliance with the provisions. As noted above, the parties merely chose New Jersey law as controlling on the guaranty, and we give effect to such a choice. Moreover, Borrower has not demonstrated that Lender's filing of the action in the Eastern District of Pennsylvania constitutes a waiver of any terms of the guaranty agreement.